Good morning. Good morning. May it please the court. Margaret Rusconi on behalf of Appellant Edward Spencer. I'd like to reserve three minutes for rebuttal. The district court's conclusion that a Rule 41a1 voluntary dismissal results in a PLRA strike is at odds with the statutory text. A voluntary dismissal is not a dismissal on the grounds of a failure to state a claim. Like a dismissal for lack of subject matter jurisdiction, there is simply no determination on the merits. The only possible grounds are voluntariness, as the 11th Circuit recently held in a published opinion. The district court reached a contrary conclusion not by analyzing the PLRA's text or the nature of Rule 41a1 voluntary dismissals. It instead focused on the fact that Mr. Spencer's voluntary dismissals were preceded by a magistrate judge's screening determination. While this court has said that such determinations can result in strikes, where the district court, quote, delays the entry of judgment until a plaintiff fails to amend, a voluntary dismissal does not accede to any such conditional ruling. Defendants otherwise raise various policy concerns, but courts across the country have for years said that voluntary dismissals are not strikes and the sky has not fallen. In any event, such policy concerns are a matter for Congress, not this court. This court should reverse. I know it's not quite what happened here, but just to kind of press on how this works analytically, what would have happened if the if the prisoner had voluntarily dismissed and then in doing so said, I'm dismissing this voluntarily on the grounds that it's frivolous, malicious, and fails to state a claim? Would that would that kind of voluntary dismissal count as a strike? It wouldn't, Your Honor, because his motivations or his reasons would be irrelevant. The way that Rule 41A1 voluntary dismissals work, what this court has said in Lake at Las Vegas, 933 F. 2nd at 727, they do not consider a plaintiff's reasons for filing a voluntary dismissal. The, quote, alpha and omega is the doing of the plaintiff alone. It's just a simple filing of the notice. That's the only operative portion of a voluntary dismissal. And that way, it's somewhat similar to a dismissal for lack of subject matter jurisdiction. The only operative portion of such a dismissal is the jurisdictional finding. There can be instances in dismissals for lack of subject matter jurisdiction where maybe the district court still reaches the merits for whatever reason. But what this court said in Moore v. Maricopa County, 657 F. 3rd at 894, 655, that it doesn't matter. There can be no alternative holding in those cases. There's only one grounds, the jurisdictional grounds. And here, in a Rule 41A1 context, the only grounds are voluntariness. It's simply the voluntarily filing of the plaintiff. Because they're... Let me ask you this. You're familiar with the case of Harris v. Magnum. Yes, Your Honor. And your take on that. And that one, as you know, the initial ruling that the complaint failed to state a cause of action wasn't negated by the plaintiff's later failure to amend the complaint. What bearing, if any, do you think that case has on this one? Your Honor, I actually think that that case helps us here. Because what that case points out is that what really matters is whether there was a merits determination and whether that merits determination, whether the dismissal was in effect a merits determination. In Magnum, the dismissal, the ultimate entry of judgment, was just a delayed entry of judgment. Or as this Court said in Lyra, it converts from a dismissal of the complaint into the dismissal of the action. So the initial merits determination is still what the dismissal is when the dismissal is for failure to prosecute or for failure to follow a court order. But here, there is no merits determination. The only, like I said before, the only operative part is the voluntariness. That is what the grounds of a voluntary dismissal are. And Your Honor, it's actually especially clear for initial voluntary dismissals, the fact that they have no merits determination. It's actually clear given the language that defendants point out in page 28 of their response brief. Rule 41A1B says that only a second voluntary dismissal, quote, operates as an adjudication on the merits. So for an initial voluntary dismissal, like Mr. Spencer's, there can be no adjudication on the merits. There is no merits determination whatsoever. And because there's  No, I mean, it's fair. It's just that the statute doesn't say adjudication on the merits, right? It talks about something being dismissed on the grounds of that. And I think the other side's position is not necessarily that all voluntary dismissals would count, but that some might when the circumstances would indicate that that's kind of what's really happening, right? So in my hypothetical where the prisoner says, yes, I can see that this case is frivolous and fails to state a claim, and therefore I'm voluntarily dismissing it, you might think that that could be, there is an argument that that could fit within the text of the statute. And so I think the other side would say, and moving forward from that, that's kind of what's going on here. Your Honor, I would say in that hypothetical that those would be perhaps reasons or motivations for filing a voluntary dismissal, but they aren't the grounds. What this court and the Supreme Court has said, what grounds mean is the legal basis, the legal justification of the action, what is the operative portion of it. And no matter what a plaintiff says in his filing of a notice of voluntary dismissal, those aren't the grounds because they aren't the legal basis. They're irrelevant. That's what this court has said. I mean, I guess another way to say it would be the only entity that can dismiss something on the grounds that something is frivolous is a court. Yes, Your Honor. I think that is a clear way to read the statutory text. Right. And I guess the question there would be the statute is written in sort of the passive voice, you know, that was dismissed on the grounds that, as opposed to saying that a And I you want us to read basically the court to be implicitly into the statute. And why do you think that's justified? Well, first, I don't think this Court has to read it that way. I think it, like I said, it would be enough just to say that a Rule 41a1 voluntary dismissal is not a merits determination or is just on the grounds of voluntariness, and that alone is enough to say that it can't be on the grounds of failure to state a claim. But, Your Honor, both the Supreme Court and actually this Court have talked about in the context of where statutes are written in the passive voice. And what this Court and the Supreme Court have done is look to the broader context to look at, OK, well, who is the normal actor in these situations? And the statutory context under the PLRA makes clear that the only actor contemplated for dismissing an action on any one of these enumerated grounds is a court. And this Court can look to its decision in AHALA v. Parole Commission, that's 997 F. 2nd 655, where this Court has looked at a statute that uses the passive voice. In some way, it's kind of similar to when there is a definitive article. If you say the Parole Commission or the defendant, you presume you know who the person being talked about is, it's similar when you use the passive voice. It's assumed that you know who the actor is based on the rest of the statutory context. And here, the statutory context only points to one actor, a court. And that also makes sense because whether an action should be dismissed on the grounds that it is frivolous, malicious, or fails to state a claim, those are legal determinations that typically only a court makes. Parties and plaintiffs can make arguments as to what grounds are appropriate, but usually it's only a court who decides whether the dismissal should be based on any one of those grounds. I think you touched on this a little bit earlier, but I guess what troubled me about this case is if we agree with your construction of the statute, it seems to me that in this case, your client could file hundreds of lawsuits, have them found to be without merit, and withdraw, never ever file again, and just dismiss. And there would be no impediment to that. Would you agree with that? No, Your Honor, I would disagree that there's no impediment to that. But first, let me just step back for a second. And to be clear, this court would not be the first court to adopt our reading of the PLRA. The 11th Circuit has adopted this reading, actually, since 2016, the 4th Circuit since 2011, the 10th Circuit since 2015, and... That's all great, but I still want an answer to my question. Could your client potentially, if he did what he did in this case, not file an infinite number of cases, have the court find that there was a failure to state a claim, dismiss the case, not have it count as a strike? Isn't that correct? Your Honor, it is correct that they would not count as a strike, but there are other tools at district court's disposal that district courts could use. I'm just thinking about the PLRA here, and that's what I want to find out, is that your position that under the PLRA, your client could, say, a hundred times do this, and it would not basically count as a strike. That is correct, Your Honor, they would not count as strikes, but I don't think that is a cause for this court to be concerned for, actually, three different reasons. One, Your Honor, as I mentioned before, other circuits have adopted this reading, and there is no evidence of any sort of floodgates opening or any sort of, you know, exponent number of bad actors doing just what you described. Second, Your Honor, actually, magistrate judges in this circuit are recommending to incarcerated plaintiffs that if they have an initial screening and the magistrate judge says, I've determined that you failed to state a claim, you can either file an amended complaint or you can file a voluntary dismissal and avoid a strike. So when there are magistrate judges in this circuit that are recommending that, you have people on the front lines who aren't seeing this sort of problem being in effect. Additionally, Your Honor, as I mentioned, there are other tools in district court's disposal. They could declare a particularly problematic plaintiff as a vexatious litigant. District courts also have discretion when granting IFP status in the first place. Your Honor, it's also worth noting that, as I mentioned before, Rule 41A1B actually has a built-in protection for abusing the voluntary dismissal process via the two-dismissal rule. So a plaintiff could not file the same claims or even file complaints arising out of the same facts over and over again and continue to avoid strikes, as Your Honor put it. They would be barred from doing that more than twice. As to the same facts, I certainly understand that. But I'm just saying that, obviously, in this case, your client's a very smart, capable person in terms of coming up with things. Lots of litigation. So let's assume it's all new facts. Basically, what you're saying is this is Congress's problem. You must, if you will, do what Justice Gorsuch did in Bostick and just follow this. Is that right? Well, Your Honor, I think that we have a pretty clear textual reading. But yes, if that does become a problem, that's certainly an issue for Congress to step in and address. And if it were a problem worth addressing, I think we would have seen it by now, given that this is a reading that courts have adopted for over 10 years now across the country, and we haven't seen this become a problem. In fact, the only two problems that defendants point out are two district court cases 17 years apart. And actually, in the more recent case, the Western District of Arkansas case, the defendant's site, the district court actually used its authority to declare the plaintiff in that case a vexatious litigant. So that is a tool that district courts have at their disposal if this becomes a problem. But we haven't seen it become a problem. I also want to turn to Mr. Spencer's voluntary dismissals in this case, because I think it's important to point out that those dismissals are not the hypothetical that Judge Bresset you pointed out at the very beginning of this argument. Mr. Spencer in no way indicated that he was voluntarily dismissing his claims, because he thought that he had failed to state a claim. In the Beeler case, he filed a voluntary dismissal that was — that just said, I'm voluntarily dismissing this under Rule 41A1, and that was the end of the matter. In Coker, Your Honors, he filed it as an objection to the magistrate judge's finding and recommendation. So I think it would be pretty hard to say that he acceded or adopted or somehow incorporated the magistrate judge's failure to state a claim finding in his own voluntary dismissal. He objected to them when he voluntarily dismissed. And so, at the very minimum, this case is not the situation where you have a voluntary dismissal on any sort of failure-to-state-a-claim basis. And for that reason, Your Honors, I would just ask that you read the statutory text as Congress wrote it and as this Court has interpreted it time and again to mean what it says. And it says that a strike is a dismissal on the grounds that it failed to state a claim. A voluntary dismissal cannot be that. And for that reason, we ask Your Honors to reverse. Thank you. We'll put two minutes on the clock when you return. Let's hear from the State. Good morning, and may it please the Court. Deputy Attorney General Martha Ehlenbach for defendants. The Court should follow its prior decisions in Harris v. Mangum, El Shaddai v. Zamora, and Kanat v. Hogan, which each hold that a court must look to the reasons underlying the dismissal when assessing a strike. And here, where a prisoner chooses to preemptively dismiss a meritless action, and the record shows that the dismissal occurred because a screening decision found that the action is for failure to state a claim, and it is a strike. It seems like our other cases don't really answer this, because those read to me as more how do you interpret a court order, whereas here you're essentially asking us to interpret what a party has done. Your Honor, I would say that's a distinction without a difference in this case. And the case most on point for that is really Harris v. Mangum, as Your Honors pointed out. In that case, the plaintiff filed four cases that were dismissed with leave to amend, just like Mr. Spencer did here. And then he failed to file the amended complaint within the time allowed, and the district court dismissed those cases. Those dismissals were for failure to state a claim, this Court held, even where the Court had contemplated that those complaints maybe could have been saved by amendment, and even where the ultimate final dismissal was actually for failure to prosecute. But isn't this still — isn't that ultimately just the interpretation of a court order? We're deciding in that case that when a judge has dismissed a case for failure to state a claim and the defendant does nothing, and that dismissal essentially ripens into a failure to prosecute, that we should therefore interpret the order as falling within the grounds of the statute. But here that's not what's happening. There's a determination by a court and then a voluntary dismissal which essentially erases it. I don't believe it's correct that it erases it, Your Honor. Your Honor is still empowered to look under these prior decisions as to the reason for the dismissal. And that's what this Court has really held every time, in looking at the text of the PLRA, in looking at that dismissal on the grounds. So what if Spencer had, in response to the Court's decision, filed a voluntary dismissal that says, I strongly disagree that this — my action fails to state a claim, but I lack the resources to pursue this matter further, therefore I'm voluntarily dismissing it. Would that change this? I have two — I have a two-part answer to that. The first part is that Mr. Spencer's disagreement with that decision in and of itself does not change the analysis, because he's still dismissing on the basis of that underlying screening order. Now, that second piece — Well, I don't think that's true. In my hypothetical, he's not doing that. He's dismissing it because he just can't pursue it further, because he lacks the resources. Right. That second piece, I think that's where the difference might lay, Your Honor, in that if there — if the record does show, or if there's litigation regarding a plaintiff's IFP status, and that plaintiff comes back after the defendant has presented that initial evidence and said, I dismissed for a different reason, there's some other impediment to prosecuting my case, or something like your example, I don't have the resources at that time, I think that would be evidence that a court can consider in determining whether or not that dismissal is a PLRA strike. Right. But certainly here — One difficulty with that, then, is that we would then be essentially interpreting what a prisoner means when he or she dismisses a claim, which is somewhat counterintuitive considering how the statute works, which is sort of mechanical. It says, you know, were there three strikes, yes or no, there we're going to have to delve into what the prisoner meant when he dismissed something, which seems a little unwieldy. Your Honor, would still really be only — the court would still really be only answering one question, which is, what is the underlying reason for that dismissal? And that's the exact same thing this Court has always advised that courts must do. Right. But in my hypothetical where a prisoner says, I disagree that this was for failure to state a claim, the issue is that I just don't have the resources to go forward with that, would a court then examine whether that's valid? We would go and do some discovery onto the prisoner's resources to find out that, well, no, in fact, the true reason for dismissal is because he just can't state a claim and he's really admitting that. These resources arguments that he's making are just pretext. I don't know that there would need to be discovery, Your Honor. I think it could still fit into the ordinary litigation about IFP status. Usually there's an initial motion and a response and a reply, and then the prisoner — the court would be free to consider what evidence the plaintiff puts forward as part of that motion. And certainly district courts have the ability to control their dockets and to determine what they would need to consider in that type of instance where there's litigation about an individual's three-strike status. But at the end of the day, in Mr. Spencer's case, we don't need to really evaluate that question, because Mr. Spencer never claimed he was dismissing for any reason other than the screening order. And we know in the Coker 1 case in particular — Well, I mean, you want us to assume that, right? I mean, you want us to assume that when a prisoner receives an order like this and then voluntarily dismissed, that he's doing so because of the reasons the judge gave, and that if he wanted to opt out of that, if you will, he would have to say something to put us on notice of that. I mean, it seems like we're getting a fairly far afield of the statutory text here, though. Our interpretation still requires the Court to look at the reason for the dismissal, which is exactly the statutory text. And in this case, this Court doesn't need to do — to look any further, because as Mr. Spencer indicated in Coker 1, it's in the record. In his response to the Court's screening order, he says he wants to dismiss in order to attempt to avoid a strike, essentially. And that shows that the dismissal fits well within the bounds of the PLRA. And it's essentially what happened here. I'm not sure I agree with that. I mean, it shows he doesn't want to have the strike, which makes perfect sense. I don't know that it shows that any — it shows he's aware of the risk that this could be considered a strike. I don't know that it shows he's accepting the district court's reason. That would require us to make an assumption. And we don't need to — we don't need him to accept the district court's reason,  We're looking at that underlying reason for the dismissal. And the Court found he failed to state a claim, which is exactly the — Except the Court granted him leave to amend. True. And that — Which means that the Court said there's a possibility you can state a claim. That's true. And that's what happened in Harris v. Mangum as well. Right. And that wasn't a barrier to Harris v. Mangum, the case being determined a strike. The other piece, Your Honor, and Your Honor recognized, that this would cause an issue as well, practically, because without this, there would be that sort of leaky filter that the Supreme Court talked about in Coleman v. Tollefson. We wouldn't be able to consider the fact that there are inmates like Mr. Spencer who has done this five times, where he has filed a case, waited for the magistrate judge to evaluate the merits, and then decided that he, at that point in time, is going to voluntarily dismiss. The goal of the PLRA is really to avoid that process by requiring inmates to think twice before filing a suit. But isn't the other goal to avoid needless litigation? And so if the prisoner elects to voluntarily dismiss, ultimately that's an act of judicial economy in the long run, because it doesn't have to come back up to the magistrate judge. In these cases, it's not, Your Honor, because especially when a court screens a complaint and dismisses the plea to amend multiple times. But under your theory, you would want the magistrate judge to re-evaluate a second time, or determine that it was frivolous. I mean, that's, in other words, if voluntary dismissals count as strikes, prisoners are going to try to amend their complaint, it goes back up to the MJ, and the magistrate judge has to spend more time evaluating the amended complaint. What is the efficiency in that? The other possibility, Your Honor, is that the prisoner will voluntarily dismiss before this process happens, and that's really what we want to encourage. The goal of the PLRA is judicial economy, so to avoid the fact that courts would have to go through the screening process. And it becomes especially an issue when an inmate screens and it's dismissed, and screens and it's dismissed four, five, or six times, which doesn't happen. We can imagine that happening. I mean, I guess one question I would ask is, you know, if there's an inmate who's repeatedly filing things and then having them screen and dismissing, the inmate is never going to win anything. And so this would, we're hypothesizing an inmate who has no desire to actually succeed on a claim because he's always going to voluntarily dismiss. So there might be such a person who's just using the courts for sport, but at that point, wouldn't there be some other remedies that a court would have to just stop an inmate from filing anything altogether? Your Honor, this is a remedy. The PLRA says an inmate who brings multiple actions. Are there other remedies? I mean, the vexation, declaring the litigant a vexatious litigant, pre-filing review orders? Not necessarily. I think it would— You don't think those could apply? Well, I think it's a very high standard for evaluating whether or not there needs to be a pre-filing order issued. And I don't know that there's any case finding that simply multiple voluntary dismissals would meet that standard. And the other issue— Well, I mean, it seems quite plausible that it would, right? If somebody is routinely filing things and then getting them dismissed and then walking away and they're doing this repeatedly, that would seem like a good candidate for somebody who maybe shouldn't be allowed to file in the courts without special reason. Potentially. But the PLRA gets to that as well. And it gets to that more quickly and cleanly here because looking at the underlying reason for the dismissal in this type of case, it is essentially a dismissal for failure to state a claim. If we go back to the text, I mean, which says dismissed on the grounds that it is frivolous, malicious, or fails to state a claim, I mean, don't we usually think that the grounds for dismissal are the grounds given by a court? And here a voluntary dismissal sort of eclipses those grounds because it can be given — it can be voluntarily dismissed for any reason and for no reason. Well, remember, there was a court dismissal here. I mean, the court did determine that the action failed to state a claim, and there's nothing in the statute that says the ultimate dismissal must be court-ordered. But the action wasn't dismissed. The action was dismissed by the decision of Mr. Spencer to voluntarily dismiss his own case. That's true. And that's essentially the argument this Court rejected in Harris, where the action was dismissed for failure to prosecute, but the underlying reason for the dismissal was the failure to state a claim. But you would agree that an order dismissing with leave to amend is not a final order? That's right, Your Honor. It's not. But again, Harris decided that question because in Harris it wasn't a final order either. The plaintiff was given leave to amend in those cases. So, counsel, how do you deal with the actions of the other circuits, the Fourth and the Eleventh, and the Tenth, and an unpublished, have gone the other way? Do you think they're wrong? I think the Tenth — I'll address the Eleventh Circuit's case in Smith, because Smith is the only case that expressly decided this issue. The Fourth and Tenth, there were really other reasons why those underlying decisions weren't strikes. They weren't — there was no underlying full dismissal of the action for failure to state a claim in those two cases. But in Smith, there was, and Smith actually followed another Eleventh Circuit case called Dacre, which disagreed with Harris v. Mangum. So there's — it's that underlying disagreement that led to that result. And I think here, because Harris reached the opposite result, this Court should do so here as well, because this Court understands that the real question here is whether the dismissal rang the bells of frivolousness, maliciousness, or failure to state a claim. It's — and the mechanical reason for the dismissal, the procedural posture of the dismissal, does not need to be dispositive. That's really the biggest problem with plaintiff's rule, is that it's a categorical rule that doesn't allow the Court to evaluate. It would carve out this blanket exception for voluntary dismissals, which isn't contemplated by 1915g, and it wouldn't allow the Court to evaluate whether a particular voluntary dismissal rang the bells of failure to state a claim. And then it would also produce that leaky filter, where inmates who want to game the system could file multiple meritless actions and voluntarily dismiss without consequence. Mr. Spencer has done so. He's filed three additional cases where he voluntarily dismissed, sometimes after receiving multiple screening decisions. And even though the second time he didn't add any new allegations, the Court found that his complaints failed for the same reason that it failed in the original case, he still — at that point, he voluntarily dismissed. At that point — and this Court looked at that in Knapp as well — at that point, it's simply reasonable to determine that he can't state a claim. And that essentially operates as a concession. Regardless of his own private feelings on the matter, certainly if he disagrees, he can object to the screening decision, he can request review by the district court, or he can evaluate his lawsuit at the beginning, which is really what we want to encourage inmates to do, look at the merits of their case before filing. But when there's a pattern of doing this, that is certainly strong evidence that the underlying reason for the dismissal is this gamesmanship piece where the inmate did fail to state a claim, and the inmate is attempting to avoid that determination. But really, that means that the underlying reason for that dismissal is that underlying determination that he failed to state a claim. Just to be clear in terms of what you'd be — if we agree with you, what you'd be saying, the way this should work, I guess I take you to be saying if a court screens something and dismisses it and then there's a voluntary dismissal, we're basically going to presume that this was dismissed on the grounds that it was frivolous or malicious or failed to state a claim. But if the inmate wants to demonstrate otherwise, he would need to say something in the voluntary dismissal to put us on notice of that, and then we would have an evaluation as to whether his explanation was genuine or more correct. Is that your position? Close, Your Honor. The inmate could either express something in the voluntary dismissal itself or in the later three strikes litigation, because usually when a court's looking at evaluating a strike, it's not going to be in that underlying action. It's going to be in a subsequent action where a party meets that initial burden of production to show — Okay, so you would actually allow Mr. Spencer to come in here and say, even though I didn't say anything when I dismissed my case, I now want to explain to you why I did that, and I did that because I was in solitary confinement. I was unable to file anything further, and that's why I voluntarily dismissed my case. Yes, Your Honor, we could allow for that. That doesn't need to happen here because there is evidence in the record regarding why Mr. Spencer dismissed, and he didn't present an alternative reason to the district court below when he was litigating his three-strike status here. So for purposes of this case, it's clear from the record what the reason for his dismissal was. But yes, certainly in the appropriate case when there is no expressed basis for the voluntary dismissal in that underlying action, a district court could consider the plaintiff's proposed proffer as to why the case was dismissed. And that's — We've taken you over your time, and I want to see if my colleagues have other questions for you. Thank you, Your Honor. Thank you. May it please the Court. I just have two points, Your Honor. First, I just want to point out that defendants really have no counter to either the text of the PLRA or how Rule 41A1 voluntary dismissals operate. The PLRA says that a dismissal is a strike only if the dismissal is on the grounds that it fails to state a claim. A voluntary dismissal cannot be on those grounds because the only potential grounds are voluntariness. What defendants are left with is looking, as this Court has pointed out, is really just a plaintiff's motivations, but neither the text of the PLRA considers the motivations, and that's actually not how Rule 41A1 voluntary dismissals work. Such motivations are irrelevant. So really, at the end of the day, what we're left with are defendants' policy concerns. They point to concerns about potential abuse, and they point out Mr. Spencer as a potential example of such a problem. But I think it's worth pointing out that Mr. Spencer actually is not. He's been quite a successful plaintiff. In the 18 cases that have reached conclusion that Mr. Spencer has litigated, he's reached settlement in six of those cases. So not only, Your Honors, has he made it past a screening determination in a vast majority of his case, but he has settled with defendants in 30 percent of the cases in which he's litigated. Your Honors, there are simply no policy concerns that we have in the record worth addressing, and if there are such concerns, that's a matter for Congress because the text here is clear. Rule 41A1 voluntary dismissals cannot constitute strikes. We ask that you reverse. Thank you. We thank both counsel for the briefing and argument, and this case is submitted. ??   ??
judges: THOMAS, SMITH, BRESS